IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**LORRA SMEAD,**                        Case No. 3:15 CV 824

    Plaintiff,                        Judge Jeffrey J. Helmick

    v.                        Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                        REPORT AND RECOMMENDATION

### INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Summary Judgment.[1] (Doc. 10). On April 27, 2015, Plaintiff Lorra Smead ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") (Doc. 1). This matter has been referred to the undersigned pursuant to Local Rule 72.2(b)(1). (Non-document entry dated April 27, 2015). For the reasons below, the undersigned recommends the Court deny Plaintiff's Motion for Summary Judgment and dismiss the Complaint.

### PROCEDURAL HISTORY

Plaintiff filed an application for SSI and DIB in May 2012, alleging disability as of February 11, 2011, due to arthritis, osteoporosis, emphysema, depression, and anxiety. (Tr. 29,

---

1. As an initial matter, this court has limited jurisdiction when reviewing final decisions of the Commissioner. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997); 42 U.S.C. § 405(g). Therefore, the undersigned proceeds with the appropriate standard of review for social security cases, rather than the standard of review for a summary judgment motion.

225).[2] The claim was denied initially and upon reconsideration. (Tr. 91-94). Plaintiff then filed a request for an administrative hearing, which was held in June 2013. (Tr. 47-81, 129). Following the hearing, at which Plaintiff, represented by counsel, and a vocational expert ("VE") testified, the administrative law judge ("ALJ") issued an unfavorable decision. (Tr. 26-39). This decision became final when the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff now seeks judicial review.

Plaintiff filed a Motion for Summary Judgment on September 4, 2015, arguing only that the ALJ failed to apply the correct legal standards. (Doc. 10). The Commissioner filed a brief on the merits on November 24, 2015. (Doc. 13).

**FACTUAL HISTORY**

Personal Background

Plaintiff was born on February 11, 1961, and was 52 years old as of the administrative hearing date. (Tr. 50). She has a tenth grade education. (Tr. 230). She has prior work experience in factories. (Tr. 226).

Relevant Medical Records[3]

Plaintiff went to the emergency room in October 2011 following a motor vehicle accident. (Tr. 422). She was alert and cooperative with a calm affect. *Id.* Douglas A. Scott, M.D. noted that Plaintiff demonstrated an appropriate mood and manner. (Tr. 424).

---

2. There appears to be some discrepancy in the record about these dates. (Tr. 175-87; Doc. 13, at 1). The undersigned relies upon the dates used by the ALJ, as they are undisputed by Plaintiff. (Doc. 10, at 2).
3. Plaintiff challenges the ALJ's determination regarding only her mental impairments; therefore, the undersigned focuses on evidence related to such. Plaintiff waives challenge to the ALJ's findings regarding her physical impairments. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991).

2

Plaintiff treated with Michael R. Engle, D.O., from August 2012 to February 2013, for her mental impairments, in addition to physical impairments. (Tr. 533-51). At the first visit in August 2012, Plaintiff complained of anxiety, fatigue, depression, high irritability, emotional lability, insomnia, and decreased concentration. (Tr. 549). Dr. Engle noted she had no anhedonia, no suicide plan, no homicidal thoughts, and no absence of motivation. *Id.* He observed a euthymic mood, unimpaired thought processes and content; and normal appearance, behavior, affect, and neurovegetative assessment. (Tr. 550). He assessed Plaintiff with depression and prescribed medication. (Tr. 550-51).

Plaintiff had another appointment with Dr. Engle in September 2012. (Tr. 546). She reported experiencing "vivid dreams on Prozac". *Id.* Plaintiff complained of the same psychological symptoms as she did at the prior visit and Dr. Engle noted that she "showed worry." (Tr. 546-47). Dr. Engle changed her prescription medication. (Tr. 548). He advised her to see a psychiatrist for her work evaluation forms. *Id.*

The following month, in October 2012, Plaintiff complained of the same psychological symptoms, but Dr. Engle again noted normal psychiatric findings. (Tr. 544-45). He did not observe worry at this visit. *Id.* Plaintiff reported side effects with the prescription medication, resulting in Dr. Engle once again changing her prescription medication. *Id.*

During an appointment with Dr. Engle later that month, Plaintiff reported the new medication was working well for her depression symptoms. (Tr. 541). She reported no abnormal psychological symptoms, and that her concentration was not impaired. *Id.* Dr. Engle once again noted normal mental status examination findings and continued the same prescription medication. (Tr. 541-42).

3

At the next appointment in November 2012, Plaintiff reported no psychological symptoms and that the medication was working well. (Tr. 535). Dr. Engle noted normal results following a psychiatric exam. (Tr. 536).

At a visit to Dr. Engle in February 2013, Plaintiff reported a lack of psychological symptoms, with the exception of insomnia. (Tr. 533). Dr. Engle noted completely normal mental status examination findings. (Tr. 534).

Consultative Examiners

On June 21, 2012, Plaintiff underwent a psychological evaluation with Dan L. Boen, Ph.D. (Tr. 493-97). Plaintiff reported feeling sad or depressed; having difficulty concentrating or focusing; fearful and afraid feelings; becoming nervous and "shaky" in social situations; anxiety and panic attacks; nightmares; flashbacks; difficulty getting certain thoughts out of her mind; the need to check and re-check things; difficulty sleeping; agitation and irritability; seeing things others did not; and feeling someone is out to get her. (Tr. 493). She reported last working in December 2011 and being terminated for performance issues. *Id.* Plaintiff reported bathing approximately every three days when she felt up to it, but had no trouble dressing or bathing. (Tr. 494). She cooked, cleaned, did laundry, watched television, and shopped. *Id.* She reported she was not on any medication for mental or emotional problems and had never been to counseling or hospitalized for a mental disorder. *Id.*

Dr. Boen noted Plaintiff was oriented to time, place, and person; responsive in her speech and cooperative; demonstrated an anxious and depressed mood; was tearful sporadically throughout the examination; demonstrated slow and concrete thought form; had difficulty thinking abstractly; demonstrated mildly impaired memory and judgment; low normal intelligence; moderately impaired level of insight and concentration; and normal consciousness

4

and fund of information. (Tr. 496). Dr. Boen diagnosed Plaintiff with major depressive disorder (recurrent, severe, without psychotic features), generalized anxiety, and social phobia. *Id.* He assigned her a global assessment of functioning ("GAF") score of 40.[4] *Id.* Dr. Boen concluded that Plaintiff could understand and remember what she was asked to do on a job, but that she would be unable to concentrate and stay on task, and would have trouble getting along with her coworkers and boss. (Tr. 497).

During a physical consultative examination in June 2012, David Ringel, D.O. noted Plaintiff had appropriate and intact mentation without any abnormalities. (Tr. 490). Plaintiff reported she took psychotropic medication in the past, but was not taking them at that time. (Tr. 488). She found it hard to function at times without the medication. *Id.*

State Agency Reviewers

In June 2012, state agency reviewing psychologist Kari Kennedy, Ph.D., made a determination that Plaintiff was mildly limited in her ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence, or pace. (Tr. 511). She also noted Plaintiff had no episodes of decompensation and no history of mental health counseling. (Tr. 511, 513). Plaintiff lived with friends, cared for a pet, prepared simple meals, completed household tasks, and shopped. (Tr. 513). Dr. Kennedy concluded Plaintiff did not suffer from a severe impairment. *Id.* In August 2014, state agency reviewing psychologist Joelle Larsen, Ph.D., affirmed these findings. (Tr. 531).

---

4. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant), or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). *Id.* at 34.

5

Function Reports

Plaintiff's daughter Tracey completed a third-party function report on July 10, 2009. (Tr. 234-42). She stated Plaintiff had "no problem" with personal care; prepared her own meals; cleaned laundry and dishes; drove a car; went out alone; enjoyed spending time with her children and grandchildren; and watched television. (Tr. 236-39).

Tracey stated she took Plaintiff shopping and helped her balance a check book. (Tr. 238). She also noted it seemed as though Plaintiff often did not want to go out and that while she got along with family, she did not get along with neighbors and had no friends. (Tr. 239-40). Tracey stated Plaintiff could pay attention for ten to fifteen minutes; did not finish what she started; was unable to follow written or spoken instructions; was "not very friendly" with authority figures, but had never been laid off from a job because of problems getting along with other people; did not handle stress well; did not like changes in her routine; and feared that others were "out to get her". (Tr. 240-41). Tracey stated that after her father passed away, Plaintiff became very emotional, stressed, and depressed, and stopped going places. (Tr. 242).

On July 13, 2009, Plaintiff completed a function report. (Tr. 246-54). She lived with her boyfriend and her daily routine included getting up, watching television, and sitting around her apartment. (Tr. 246). She stated she had "no problem" with personal care; prepared her own meals; performed household chores; drove a car; could go out alone; could not use a checkbook; enjoyed watching television; petting her dog; and spending time with her children and grandchildren. (Tr. 247-50). She was unable to get along with other people, and no longer enjoyed going out or being around others. (Tr. 251). Plaintiff could pay attention for ten minutes; did not finish what she started; could not follow written or spoken instructions; did "not like" authority figures, but had never been laid off from a job because of problems getting along with

6

other people; was unable to handle stress and changes in routine; and felt that everyone was out to get her. (Tr. 251-52).

Hearing Testimony

At the June 21, 2013, hearing Plaintiff testified she last worked in December 2011. (Tr. 52). She testified she suffered from anxiety, depression, and difficulty concentrating since 2003, which prevented her from working. (Tr. 62). She would cry frequently and wanted to be left alone. *Id.* She stated she was prescribed Xanax from 2003 to 2004 or 2005, but did not seek any mental health treatment from that time until she started seeing Dr. Engle in August 2012. (Tr. 62-64). She testified Dr. Engle prescribed her psychotropic medication for depression and anxiety and that she did not suffer from any side effects. (Tr. 64). She stated Dr. Engle never recommended counseling or therapy, and she had never participated in either. (Tr. 64-65). She testified that crowds of people exacerbated her depression and anxiety, and stated she had been unable to go out by herself for about a year, but enjoyed cookouts with family and friends. (Tr. 66, 71). She testified she had no hobbies. (Tr. 72). She could cook and clean the dishes, but had help from her family with shopping, laundry, cleaning, and household tasks. *Id.* She reported experiencing two "bad days" a week during which she wanted to be left alone. (Tr. 73-74).

In response to hypothetical questions from the ALJ based on Plaintiff's limitations and similar vocational and demographic background, the VE testified the individual could perform Plaintiff's past work as an operator production assembler and rubber goods inspector/trimmer as it is generally performed in competitive employment. (Tr. 78-79). Plaintiff's counsel asked a hypothetical question about an individual's ability to work who was off task for more than ten percent of the day due to lack of concentration and other emotional factors. (Tr. 80). In response to the question, the VE opined that a hypothetical individual off task twenty percent or more or

consistently twenty percent off task again would be met with severe reprimand and/or dismissal. (Tr. 81). He also noted that an individual off task for ten percent of the day, using a strict eight-hour workday including a lunch break, would not be acceptable. (Tr. 80-81).

ALJ Decision

On August 22, 2013, the ALJ made the following findings of fact and conclusions of law:

1. Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013.

2. Plaintiff engaged in substantial gainful activity from February 11, 2011, until December 14, 2011.

3. However, there was a continuous twelve-month period during which Plaintiff did not engage in substantial gainful activity. The remaining findings address the period Claimant did not engage in substantial gainful activity.

4. Plaintiff had the following severe impairments: mild to moderate degenerative disc disease at C4-5. Plaintiff had non-severe impairments including anxiety and depression.

5. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

6. Plaintiff had the residual functional capacity to perform light work, except that she was not able to climb ladders, ropes, or scaffolds at all; and she could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.

7. Plaintiff was capable of performing some of her past relevant work.

8. Plaintiff had not been under a disability, as defined in the Social Security Act, from February 11, 2011, through August 22, 2013 (the date of her decision).

(Tr. 31-38).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in

the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for disability benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can claimant perform past relevant work?

       5.      Can claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues that by failing to give preferential weight to an examining source opinion over a non-examining source opinion the ALJ violated the agency's own rules. (Doc. 10, at 3-6). Indeed, "even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r SSA*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff alleges the ALJ violated two specific regulations, 20 C.F.R. §§ 404.1527(c)(1) and 404.1527(c)(2)(ii). (Doc. 10, at 4-5). Section 404.1527(c)(1) addresses examining relationships and states, "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." Plaintiff first argues the ALJ erred by giving greater weight to the opinion of non-examining sources, rather than examining source, Dr. Boen. (Doc. 3-5). This argument is unfounded. On its face, this regulation

10

does not *require* the ALJ to give more weight to the opinion of an examining source over a non-examining source; it just states that is *generally* the practice. Unless the physician is a treating source, which carries a presumptively controlling weight, the ALJ is responsible for determining the weight of medical opinions. 20 C.F.R. §§ 416.927(d)(2); 404.1527(d)(2).

Under the regulations, there exists a hierarchy of medical opinions: first, is a treating source whose opinion is entitled to deference because it is based on an ongoing treatment relationship; second, is a non-treating source, which are those medical sources who have examined but not treated the Plaintiff; and lastly, is a non-examining source, those who render opinions based on a review of the medical record as a whole. 20 C.F.R. § 416.902.

When evaluating a medical source, an ALJ must weigh medical opinions in the record based on certain factors. *Rabbers*, 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*.

Non-examining sources are physicians, psychologists, or other acceptable medical sources that have not examined the claimant, but review medical evidence and provide an opinion. § 416.902. The ALJ will consider the findings of these non-examining sources as opinion evidence, except as to the ultimate determination about whether Plaintiff is disabled. § 416.927. "[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp. 2d 813, 823-24 (S.D. Ohio 2011). This is because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; §

11

416.927(d),(f); SSR 96–6p at *2–3. "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F.Supp. 2d at 823-24.

Here, Dr. Engle, Plaintiff's treating physician did not offer an opinion regarding her ability to work due to her mental health impairments. Thus, there are only opinions from an examining source and those from non-examining sources. The ALJ was only required to consider certain factors when evaluating the opinions of the consultative examiner and the state agency reviewers; she was not required to provide reasons for doing so. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (holding "the SSA requires ALJs to give reasons for only *treating* source" opinions) (emphasis in original).

Nevertheless, the ALJ clearly considered the factors because she provided reasoning for the weight she assigned to various opinions and the overall evidence relating to Plaintiff's mental impairments, which speak to the consistency and supportability of the opinion. (Tr. 34-38). She addressed Plaintiff's testimony and the opinion of her daughter Tracey, and then explained how that evidence was inconsistent with the record as a whole and thus, not entirely credible. (Tr. 34-36). *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (finding the ALJ, not the reviewing court, should judge the credibility of a claimant's statements).

Additionally, the ALJ noted that although Plaintiff had tried various psychotropic medication, she had not sought outpatient mental health treatment, such as counseling, or been hospitalized on an inpatient basis. (Tr. 34). The ALJ discussed the mild treatment of her mental impairments by her primary care physician, Dr. Engle, and the fact that the state agency reviews found no severe mental impairments. (Tr. 35). Indeed, after a short period of medication adjustment, her symptoms were controlled. (Tr. 533-42). She also noted Plaintiff's ability to

engage in daily activities, which was inconsistent with the testimony of Plaintiff and the opinion of her daughter. (Tr. 36). The ALJ also pointed out that no treating source of record had observed severe impairment with social functioning or with concentration, persistence, or pace. (Tr. 35). Thus, while not required to, the ALJ provided reasons relating to the factors of supportability and consistency for the weight given to the opinions of both the consultative examiner and the state agency reviewers. Further, the state agency reviewer's opinion that Plaintiff has mild impairments is supported by substantial evidence in the record.

Plaintiff next alleges the ALJ violated 20 C.F.R. § 404.1527(c)(2)(ii), which states in its entirety:

> Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

Plaintiff challenges the fact that the ALJ considered evidence of Plaintiff's mental impairment from medical sources throughout the record, alleging it was improper to give more weight to the opinions of other doctors in the record, over the opinion of a non-treating examining source. However, the ALJ is not only entitled to consider the entire record, but required to do so.

The ALJ addressed and considered Plaintiff's presentation and mental state during visits to other medical sources. (Tr. 35). She noted Plaintiff was alert, oriented, cooperative, and calm when she was seen at an emergency room in October 2011, and that "none of the other treating

13

or examining physicians or optometrists of record. . . reported that the [Plaintiff] exhibited severe deficits in her cognitive or social functioning or in her ability to sustain concentration, persistence, or pace." *Id.* The ALJ considered this evidence in addition to evidence in the entire record when determining it was inconsistent with the opinion of Dr. Boen—the only evidence in the record showing severe deficits.

Importantly, § 404.1527(c)(2)(ii), speaks to the weight generally given to opinions from two treating sources. Here, the ALJ weighed evidence from treating sources against the opinion of a non-treating source. This is not error of law because Dr. Boen was not a treating source. The ALJ determined Plaintiff's presentation at the examination with Dr. Boen was "markedly different than her typical mental presentation" which she believed spoke to Plaintiff's credibility. (Tr. 35). She also noted there were inconsistencies throughout Dr. Boen's opinion itself. *Id.* The ALJ considered the appropriate factors, and even though not required to do so, provided sufficient reasons for the weight she assigned to the opinions of both examining and non-examining sources.

## Conclusion

Following review of the arguments presented, the record, and the applicable law, the undersigned finds that the ALJ applied the correct law and that her determination is supported by substantial evidence. The undersigned recommends the Court deny Plaintiff's Motion for Summary Judgment, dismiss the Complaint, and affirm the findings and conclusions of the Commissioner.

s/James R. Knepp, II  
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).